Anthony R. Strauss – SBN 72842
ars(at)strausslawgroup.com
**STRAUSS LAW GROUP, A Professional Corporation**
121 N. Fir St., Ste. F
Ventura, California 93001
Telephone (805) 641.9992
Facsimile (805) 641.9993

Attorneys for Plaintiffs Oceans II, Inc.,
    Sonny Michel ("Mike") Gunther, and Debra Kennard

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| OCEANS II, INC., a California Corporation; SONNY MICHEL ("MIKE") GUNTHER, an individual; and DEBRA KENNARD, an individual,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SKINNERVISION INC., a Florida Corporation; KEVIN SKINNER, an individual; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | **CASE NO.: CV12-6867** CAS (Ex)<br><br>**COMPLAINT FOR:**<br>1. **Breach of Contract (Director Deal Memo)**<br>2. **Breach of Oral Contract**<br>3. **Fraud**<br>4. **Negligent Misrepresentation**<br>5. **Failure to Pay Wages in Violation of the California Labor Code**<br>6. **Failure to Provide Itemized Wage Statements in Violation of California Labor Code § 226**<br>7. **Failure to Pay Wages in Violation of the Fair Labor Standards Act**<br>8. **Quantum Meruit**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.　　This action arises out of the failure to make a motion picture. By separate agreement, Defendant Kevin Skinner ("SKINNER") agreed fund a motion picture

1   tentatively entitled "The Italy Boys" (the "Film") in the approximate amount of Twelve
2   Million Dollars ($12,000,000). The Film was to be directed by Plaintiff Sonny Michel
3   ("Mike") Gunther ("GUNTHER") and produced by Plaintiff Debra Kennard
4   ("KENNARD"). Beginning in or about early September 2011, SKINNER repeatedly
5   told GUNTHER and KENNARD that he had the funds secured to make the Film and
6   that Plaintiffs should prepare for production. SKINNER, through his company,
7   Defendant Skinnervision Inc. ("SKINNERVISION"), entered into a written contract
8   with GUNTHER's company, Plaintiff Oceans II, Inc. ("OCEANS"), to pay OCEANS
9   the sum of $900,000 for the services of GUNTHER to direct the Film.  SKINNER
10  entered into an oral contract with KENNARD to perform the pre-production,
11  production and post-production services necessary to make the Film at the rate of
12  $9,000 per week for 13 weeks, plus fringe benefits. The contract between
13  SKINNERVISION and OCEANS provided that SKINNERVISION would pay
14  OCEANS $900,000 for the services of GUNTHER on a "pay-or-play" basis, meaning
15  that it would pay OCEANS if a deadline came and went without production
16  commencing.   The deadline came and went, film production did not begin, and
17  SKINNERVISION failed to pay OCEANS the $900,000 or KENNARD at the rate of
18  $9,000 per week, plus fringe benefits, or anything at all for the services that she
19  provided.  OCEANS now seeks contract damages, plus its attorney's fees and costs.
20  Plaintiff KENNARD seeks damages for breach of the oral agreement to pay her for her
21  services and for unpaid wages, liquidated damages, penalties, interest, and her
22  attorney's fees and costs for failure to pay her all wages owed in violation of California
23  and Federal law.  Plaintiffs OCEANS, GUNTHER and KENNARD seek damages that
24  they incurred for fraud and negligent misrepresentation based upon their reliance on
25  SKINNER's representations.  This Court has jurisdiction over this matter pursuant to 28
26  U.S.C. §§ 1331, 1332, and Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29
27  U.S.C. § 216(b).
28  / / /

2
COMPLAINT

## THE PARTIES

2.     Plaintiff OCEANS is and was at all times mentioned herein a corporation incorporated under the laws of the State of California, having its principal place of business in Los Angeles County in the State of California.

3.     Plaintiff GUNTHER is and was at all times mentioned herein a citizen of the State of California.

4.     Plaintiff KENNARD is and was at all times mentioned herein a citizen of the State of California.

5.     Defendant SKINNERVISION is a corporation incorporated under the laws of the State of Florida, having its principal place of business in the State of Florida.

6.     Defendant SKINNER is and was at all times mentioned herein a citizen of the State of Florida.

7.     The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the Defendants identified herein as DOES 1 though 10, inclusive, are unknown to Plaintiffs, who therefore sue these Doe Defendants by said fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities of DOES 1 though 10 when they have been ascertained.  DOES 1 through 10 are in some manner legally responsible for the wrongs and injuries alleged herein.

8.     Each Defendant acted as the agent or employee of the others and each acted within the scope of that agency or employment.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of parties and the amount in controversy exceeds $75,000.

10.     The Central District of California has personal jurisdiction over this matter because the unlawful actions complained of herein occurred in this district.

/ / /

1    11.   Venue is proper in the Central District of California because Plaintiff

2   OCEANS has its principal place of business in this district, Plaintiffs GUNTHER and

3   KENNARD reside in this district, the written contract between SKINNERVISION and

4   OCEANS provides for jurisdiction in the district, services by KENNARD were

5   performed in the district and the unlawful employment practices alleged herein occurred

6   in this district.

### FIRST CLAIM FOR RELIEF

#### *Breach of Contract (Deal Memo)*

#### Brought By Plaintiff OCEANS

#### Against Defendants SKINNERVISION and DOES 1-10

11    12.   Plaintiff OCEANS refers to paragraphs 1 through 11 above, and

12   incorporates the same by reference as though fully set forth at length herein.

13    13.   Plaintiff OCEANS alleges that on or about November 18, 2011 a written

14   agreement was made between OCEANS and SKINNERVISION and DOES 1-10 (the

15   "Agreement" or "Director Deal Memo").  Signed copies of the Agreement are attached

16   hereto collectively as Exhibit A.

17    14.   Under the Agreement, SKINNERVISION and DOES 1-10 agreed to pay a

18   "Director Fee" of $900,000 to OCEANS for the services of its employee, GUNTHER,

19   in directing the Film.  SKINNERVISION and DOES 1-10 agreed to pay the Director

20   Fee to OCEANS on a "pay or play" basis, meaning that, even in the event that

21   production did not begin on the Film, SKINNERVISION and DOES 1-10 were to pay

22   OCEANS the Director Fee.  The Agreement set midnight (PST) on December 5, 2011

23   as the deadline for SKINNERVISION and DOES 1-10 to commence pre-production on

24   the Film and to fully execute a completion bond for the Film.  Under the Agreement, if

25   the deadline passed without the commencement of pre-production and the execution of

26   a completion bond, then SKINNERVISION and DOES 1-10 were to pay OCEANS the

27   full Director Fee.

28   / / /

15. As of December 6, 2011, and the date of the filing of the Complaint herein, SKINNERVISION and DOES 1-10 did not begin pre-production on the Film. SKINNERVISION and DOES 1-10 also did not pay OCEANS the Director Fee.

16. SKINNERVISION and DOES 1-10 breached the Agreement by not paying OCEANS the Director Fee on December 6, 2011 or anytime thereafter.

17. Under paragraph 6 of the Agreement, in the event that SKINNERVISION and DOES 1-10 fail to comply with any provision thereof, including the failure to pay the Director Fee to OCEANS, SKINNERVISION and DOES 1-10 "shall pay all costs and expenses of any legal actions taken by [OCEANS] and/or [GUNTHER] to enforce the terms of [the Agreement] (including without limitation attorneys' fees and expenses)."

18. Plaintiff OCEANS has performed all obligations to Defendants SKINNERVISION and DOES 1-10, except those obligations OCEANS was prevented or excused from performing, if any.

19. Plaintiff OCEANS has suffered damages legally (proximately) caused by Defendants' breach of the Agreement. The damages include the non-payment of the $900,000 Director Fee, Director's Guild fringe benefits, interest and said Plaintiff's costs and attorney's fees in enforcing the Agreement, including the bringing of the instant action.

## SECOND CLAIM FOR RELIEF

### *Breach of Oral Contract*

**Brought By Plaintiff KENNARD Against Defendants SKINNERVISION, SKINNER, and DOES 1 through 10**

20. Plaintiff KENNARD refers to paragraphs 1 through 11 above, and incorporates the same by reference as though fully set forth at length herein.

21. On or about September 1, 2011 KENNARD was contacted by SKINNER's attorney, Douglas D. Hampton ("Hampton"), who asked her to perform pre-production, production and post-production services relative to the Film. KENNARD was to serve

as "line producer" which involved all aspects of production including, but not limited to, research locations, secure the actors and staff for production, prepare the budget and do other pre-production, production, and post-production work.   SKINNER, SKINNERVISION and Does 1-10, agreed through Hampton to pay KENNARD for her for pre-production, production and post-production services. SKINNER approved the final budget for the Film, which provided payment to KENNARD in the amount of $9,000 a week for thirteen (13) weeks for a total of $117,000, plus fringe benefits according to industry standards.

22.   On or about September 3, 2011, KENNARD began to perform pre-production services including researching locations for the film, preparing the budget, securing talent and staff, arranging for production-related services and other work performed.   Plaintiff KENNARD alleges that from on or about September 3, 2011 through in or about mid-January 2012 she performed approximately 12 weeks of services for Defendant SKINNERVISION, SKINNER, and DOES 1 through 10.

23.   KENNARD performed all services and obligations to Defendants except those obligations she was prevented or excused from performing under the oral contract.

24.   Defendant SKINNERVISION, SKINNER, and DOES 1 through 10 breached their oral contract with KENNARD by refusing to pay her, upon demand, for any services she performed.

25.   KENNARD suffered damages proximately caused by Defendants breach of the oral contract in the amount of $117,000, loss of fringe benefits, plus pre-judgment interest according to proof.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THIRD CLAIM FOR RELIEF

#### *Fraud*

**Brought By Plaintiffs OCEANS, GUNTHER and KENNARD Against Defendants**

**SKINNER, and DOES 1 through 10**

26.   Plaintiffs OCEANS, GUNTHER, and KENNARD refer to paragraphs 1 through 25, above, and incorporate the same by reference as though fully set forth at length herein.

27.   In order to induce OCEANS and GUNTHER to enter into the Director Deal Memo, and KENNARD to perform pre-production, production and post-production services, SKINNER and DOES 1 through 10, commencing on or about September 1, 2011, repeatedly told Plaintiffs either directly by telephone or through his agent Hampton and others that he had secured the funding for the film, that the funds had been deposited in a pre-production account and that production would begin by particular set dates. SKINNER even told OCEANS, GUNTHER and KENNARD to get staff ready so that filming could commence on January 3, 2012. Thereafter, and until approximately April 15, 2012, SKINNER, either directly by telephone or through Hampton, repeatedly told OCEANS, GUNTHER and KENNARD that he had the funding and that production of the Film would imminently commence.

28.   It is alleged that SKINNER and DOES 1 through 10 made the above-referenced representations knowing that they were false when made.  Plaintiffs are informed and believe that at the time the representations were made, SKINNER, and DOES 1 through 10 were substantially short of funds needed to pay for the Film and had not set up a pre-production account for funding the Film.  Further, said Defendants knew that OCEANS, GUNTHER and KENNARD were relying upon such representations in deciding to enter into the Director Deal Memo, provide services to Defendants and turn down or miss other business opportunities so as to be able to make the Film.

/ / /

29.    Plaintiffs justifiably relied on the false representations made by SKINNER and DOES 1 through 10 by entering into the Director Deal Memo, by providing services and turning down or missing other business opportunities.

30.    As a proximate result of the above-referenced misrepresentations by SKINNER and DOES 1 through 10, Plaintiffs have been damaged in an amount to be proven at trial.

31.    The above-referenced false representations were made willfully, with malice, and for the purpose of fraud and oppression.  As a result, Plaintiffs are entitled to an award of punitive damages in an amount appropriate to set an example to deter and punish SKINNER and DOES 1 through 10 for such acts.

## FOURTH CLAIM FOR RELIEF

### *Negligent Misrepresentation*

**Brought By Plaintiffs OCEANS, GUNTHER, and KENNARD Against Defendants SKINNER and DOES 1 through 10**

32.    Plaintiffs OCEANS, GUNTHER, and KENNARD refer to paragraphs 1 through 25, above, and incorporate the same by reference as though fully set forth at length herein.

33.    SKINNER, and DOES 1 through 10 made the above-referenced misrepresentations regarding the ability to fund the Film without proper investigation and without any reasonable basis or belief that such representations were true.  At the time of making each of the above-referenced misrepresentations, Defendants should have known that the representations made were false and should have discovered the true facts through reasonable and diligent inquiry even if said facts were not known to said Defendants at that time they made the misrepresentations.  In repeatedly misrepresenting the status of the funding for the Film, the Defendants intended to induce Plaintiffs to rely on said misrepresentations in determining whether to enter into the Director Deal Memo, provide services to Defendants and to turn down or miss other business opportunities.

COMPLAINT

34.     Plaintiffs believed the above-referenced misrepresentations by Defendants SKINNER, and DOES 1 through 10 and did not know or have any reason to suspect that any of the above-referenced false misrepresentations made by said Defendants were made negligently, without proper investigation, and without any reasonable basis for believing that the statements made were true and correct.  Plaintiffs relied on such false representations and entered into the Director Deal Memo, provided services to Defendants, and turned down or missed other business opportunities.

35.     The above-referenced false representations by Defendants SKINNER, and DOES 1 through 10 constitute negligent misrepresentation to Plaintiffs in that each misrepresentation was intended to and did induce Plaintiffs to enter into the Director Deal Memo, provide services to Defendants, and to turn down or miss other business opportunities.

36.     As a proximate result of the above-referenced misrepresentations by Defendants SKINNER, and DOES 1 through 10, Plaintiffs have been damaged in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF

*Failure to Pay Wages in Violation of*

*The California Labor Code*

**Brought By Plaintiff KENNARD**

**Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

37.     Plaintiff KENNARD refers to paragraphs 1 through 11 and 20 through 25 above, and incorporates the same by reference as though fully set forth at length herein

38.     Plaintiff KENNARD alleges that from on or about September 3, 2011 through in or about mid-January 2012 she was employed by SKINNERVISION, SKINNER and DOES 1-10 to perform personal services in connection with the pre-production and production of the Film.

39.     SKINNERVISION, SKINNER and DOES 1-10 did not pay KENNARD wages she was owed.  The wrongful acts of SKINNERVISION, SKINNER and DOES

1-10 include, but are not limited to, intentionally denying KENNARD straight-time, minimum wage, overtime, and double time wages or other compensation that SKINNERVISION, SKINNER and DOES 1-10 should have paid under the California Labor Code and the regulations promulgated by the California Industrial Welfare Commission.

40.     Pursuant to Labor Code section 203, SKINNERVISION, SKINNER and DOES 1-10 have willfully failed to pay without abatement or reduction, in accordance with Labor Code sections 201, 202, 510 and 1194 all of the wages of KENNARD. SKINNERVISION, SKINNER and DOES 1-10 are aware that they owe the wages claimed by KENNARD, yet willfully failed to make payment. As a result, KENNARD seeks wages and penalties pursuant to Labor Code section 203.

41.     KENNARD has been available and ready to receive wages owed to her, including overtime wages.

42.     KENNARD has never refused to receive any payment, nor has KENNARD been absent from her regular places of residence.

43.     The failure of SKINNERVISION, SKINNER and DOES 1-10 to pay KENNARD wages due and owing KENNARD, as indicated in prior paragraphs, was willful; SKINNERVISION, SKINNER and DOES 1-10 have knowingly refused to pay any portion of the amount due and owing KENNARD.

44.     Pursuant to Labor Code sections 218.5 and 1194, KENNARD requests that the Court award KENNARD reasonable attorney's fees and costs incurred in this action. KENNARD also requests all unpaid wages, waiting time penalties, and interest.

45.     KENNARD believes and alleges that the wages owed her exceed the jurisdictional minimum of this Court. Based on the payroll information presently available to KENNARD, the precise amount of wages due and owing is not readily calculable; however KENNARD's standard rate of pay for the services she provided was $9,000 per week plus fringe benefits according to industry standards and she performed approximately 12 weeks of work for Defendants without compensation.

1 KENNARD shall ascertain and provide this exact figure to conform to proof as
2 obtained through discovery and at trial, as KENNARD is informed and believed that
3 many of the records necessary to perform said calculations exist and are in the
4 possession of SKINNERVISION, SKINNER and DOES 1-10.

5     46.    KENNARD is also due interest on the wages owed at the legal interest rate
6 pursuant to Labor Code section 218.6, in an amount unknown at present.   Until
7 SKINNERVISION, SKINNER and DOES 1-10 provide the documents and information
8 necessary to perform an accounting, KENNARD will not know exactly how much said
9 defendants owe her under this cause of action.

10     47.    KENNARD also alleges liquidated damages pursuant to Labor Code
11 section 1194.2 in an amount equal to the amount of unpaid minimum wages, which
12 shall be determined at trial.

13 <div align="center">**SIXTH CLAIM FOR RELIEF**</div>
14 <div align="center">***Failure to Provide Itemized Wage Statements***</div>
15 <div align="center">***in Violation of California Labor Code § 226***</div>
16 <div align="center">**Brought By Plaintiff KENNARD**</div>
17 <div align="center">**Against Defendants SKINNERVISION, SKINNER and DOES 1-10**</div>

18     48.    Plaintiff KENNARD refers to paragraphs 1 through 11 and 20 through 25
19 hereinabove, and incorporates same by reference as though fully set forth at length.

20     49.    Labor Code section 226 requires employers to provide itemized wage
21 statements (paycheck stubs) to its employees on a regular basis.

22     50.    In this case, SKINNERVISION, SKINNER and DOES 1-10 have failed to
23 provide wage deduction statements to Plaintiff KENNARD within one year of the filing
24 of this Complaint.  Plaintiff KENNARD has suffered injury as a result of Defendants'
25 knowing and intentional failure to comply with Labor Code section 226.  Pursuant to
26 California Labor Code section 226(e), damages are appropriate, and KENNARD seeks
27 such damages.

28 / / /

1    51.    Pursuant to Labor Code section 226(e), Plaintiff KENNARD requests that

2    the court award reasonable attorney fees and costs incurred by KENNARD in this

3    action.

### SEVENTH CLAIM FOR RELIEF

4

*Failure to Pay Wages in Violation of the Fair Labor Standards Act*

5

**Brought By Plaintiff KENNARD**

6

**Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

7

8    52.    Plaintiff KENNARD refers to paragraphs 1 through 11 and 20 through 25

9    hereinabove, and incorporates same by reference as though fully set forth at length.

10   53.    Plaintiff KENNARD is informed and believes and thereon alleges that at

11   all relevant times, Defendants SKINNERVISION, SKINNER, and DOES 1-10 have

12   been "employers" engaged in interstate "commerce" within the meaning of the FLSA,

13   29 U.S.C. § 203. Plaintiff KENNARD alleges that from on or about September 3, 2011

14   through in or about mid-January 2012 (the "Employment Period") she was employed by

15   SKINNERVISION, SKINNER and DOES 1-10 to perform personal services in

16   connection with the pre-production and production of the Film.

17   54.    KENNARD used interstate instrumentalities of commerce as a regular and

18   recurrent part of her employment duties for SKINNERVISION, SKINNER and DOES

19   1-10. Additionally, her regular work involved recurrent use of interstate telephonic and

20   electronic means for communication across state lines.

21   55.    Throughout the Employment Period, KENNARD regularly performed

22   work for SKINNERVISION, SKINNER and DOES 1-10 without receiving any pay

23   therefor, and regularly worked overtime hours (i.e., over 40 hours in one workweek)

24   without receiving any pay therefor.

25   56.    At all relevant times, SKINNERVISION, SKINNER and DOES 1-10

26   willfully, regularly, and repeatedly failed, and continue to fail to pay KENNARD at the

27   required minimum and/or overtime rates for straight-time and/or overtime hours

28   worked.

57.    At all relevant times, SKINNERVISION, SKINNER and DOES 1-10 willfully, regularly, and repeatedly failed, and continue to fail to make, keep, and preserve accurate records required by the FLSA with respect to KENNARD's employment, including records sufficient to accurately determine the wages and hours of KENNARD's employment during the Employment Period.

58.    KENNARD seeks damages in the amount of her unpaid compensation (including straight-time, minimum wage, and overtime pay), liquidated (double) damages as provided by the FLSA for overtime violations and/or prejudgment interest, attorney's fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

### *Quantum Meruit (Value of Services Provided)*

### Brought By Plaintiff KENNARD

### Against Defendants SKINNERVISION, SKINNER and DOES 1-10

59.    Plaintiff KENNARD refers to paragraphs 1 through 11 and 20 through 25 hereinabove, and incorporates same by reference as though fully set forth at length.

60.    Within the last year in California, KENNARD rendered work, labor, and services to Defendants SKINNERVISION, SKINNER, and DOES 1-10 at the special request of said Defendants for which said Defendants, then and there, promised to pay KENNARD the reasonable value of such services.

61.    At all times herein mentioned, the above services were and are of the reasonable value of $9,000 per week plus fringe benefits according to industry standards, for 12 weeks for a total of approximately $108,000, plus benefits exclusive of interest.

62.    No part of the above sum has been paid, notwithstanding that KENNARD has demanded payment therefore, and is now due, owing, and unpaid from SKINNERVISION, SKINNER, and DOES 1-10 to KENNARD the sum of $108,000, plus benefits and interest.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs OCEANS, GUNTHER and KENNARD pray for judgment and the following specific relief against Defendants SKINNERVISION, SKINNER, and DOES 1-10, and each of them, as follows:

**As to the First Claim for Relief for Breach of Contract (Deal Memo) By Plaintiff OCEANS Against Defendants SKINNERVISION and Does 1 through 10:**

1.    For damages for breach of contract in the principal amount of $900,000 and accrued interest at the rate of $246.58 per day from December 6, 2011 in the amount of $60,658.68 as of August 8, 2012, for a total of $960,658.68 as of August 8, 2012;

2.    For attorney's fees and costs pursuant to contract and applicable law;

**As to the Second Claim for Relief for Breach of Oral Contract By Plaintiff KENNARD Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

3.    For damages for breach of contract in the amount of $117,000 plus fringe benefits, according to proof;

**As to the Third Claim for Relief for Fraud By Plaintiffs OCEANS, GUNTHER and KENNARD Against Defendants SKINNER and Does 1 through 10**

4.    For compensatory damages according to proof;

5.    For punitive damages in an amount appropriate to punish defendants for their wrongful conduct and to deter others from engaging in similar acts:

**As to the Fourth Claim for Relief for Negligent Misrepresentation By Plaintiffs OCEANS, GUNTHER and KENNARD Against Defendants SKINNER and Does 1 through 10**

6.    For compensatory damages according to proof;

/ / /

/ / /

/ / /

**As to the Fifth Claim for Relief for Failure to Pay Wages in Violation of the**

**California Labor Code By Plaintiff KENNARD Against Defendants**

**SKINNERVISION, SKINNER and DOES 1-10**

7.    For wages owed according to proof;

8.    For prejudgment interest at the statutory rate;

9.    For statutory penalties pursuant to law, including California Labor Code section 203;

10.   For liquidated damages in an amount equal to the unpaid minimum wages owed under California Labor Code section 1194.2;

11.   For reasonable attorneys' fees pursuant to California Labor Code sections 218.5 and/or 1194;

12.   For costs of suit;

**As to the Sixth Claim for Relief for Failure to Provide Itemized Wage Statements in Violation of California Labor Code § 226 By Plaintiff KENNARD Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

13.   For statutory penalties pursuant to California Labor Code section 226(e);

14.   For reasonable attorney's fees and costs pursuant to California Labor Code section 226(e);

**As to the Seventh Claim for Relief for Failure to Pay Wages in Violation of the**

**Fair Labor Standards Act By Plaintiff KENNARD**

**Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

15.   For unpaid wages owed according to proof under applicable federal law;

16.   For prejudgment interest at the statutory rate;

17.   For liquidated damages available under applicable federal law;

18.   For reasonable attorney's fees and costs pursuant to applicable provisions of law, including 29 U.S.C. § 216;

/ / /

/ / /

**As to the Eighth Claim for Relief for Quantum Meruit By Plaintiff KENNARD**

**Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

19.  For the value of the services provided in the amount of $108,000 plus fringe benefits, according to proof;

**As to All Claims for Relief By All Plaintiffs**

**Against Defendants SKINNERVISION, SKINNER and DOES 1-10**

20.  For pre- and post-judgment interest as provided by applicable state law; and

21.  For such other and further relief as this Court may deem just and proper.

DATED: August 8, 2012

STRAUSS LAW GROUP,
A Professional Corporation

By: _____
Anthony R. Strauss
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs, Oceans II, Inc., Sonny Michel ("Mike") Gunther and Debra Kennard hereby demand trial of this matter by jury.

DATED: August 8, 2012

STRAUSS LAW GROUP,
A Professional Corporation

By: _____
Anthony R. Strauss
Attorneys for Plaintiffs

**EXHIBIT "A"**

"ITALY BOYS"

### DIRECTOR DEAL MEMO

## OCEANS 11, INCORPORATED f/s/o MIKE GUNTHER

**DATE:** As of November 18, 2011

**PRODUCER:** SKINNERVISION, INCORPORATED
Attention: Kevin Skinner

**EMPLOYER:** OCEANS 11, INCORPORATED
FED ID #: 88-0501514
c/o Weissmann Wolff Bergman
Coleman Grodin & Evall, LLP
9665 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Attn: Matthew N. Sugarman, Esq.

**EMPLOYEE:** MIKE GUNTHER
**Citizen of:** United States
**Principal Residence:** Los Angeles, CA
**Capacity:** DIRECTOR

**PICTURE:** A feature-length theatrical motion picture project tentatively titled "Italy Boys."

1.    **HOLDING PERIOD**. In consideration of Producer engaging Employer on an unconditional "pay or play" basis to furnish Employee's production services in connection with the Picture, Employer agrees to cause Employee not to accept any other engagements during the "Initial Holding Period" which may conflict with Employee rendering directing services in connection with the Picture, with pre-production services of the Picture commencing on December 8, 2011. The **"Initial Holding Period"** will mean the period commencing on the date hereof and continuing until midnight (PST) on December 5, 2011. The Initial Holding Period and any further extensions thereof will be collectively referred to as the **"Holding Period."**

2.    **COMPENSATION**.

(a)    Fixed Director Compensation. A guaranteed **"Director Fee"** equal to $900,000.

(b)    Fixed Fee Payment Schedule. The Director Fee will be payable to Employer as follows (**"Payment Schedule"**):

(i)    50% thereof on commencement of pre-production of the Picture, but in any event no later than midnight (PST) December 5, 2011 (the "**Start Date**").

(ii)    25% thereof on the completion of principal photography.

(iii)    25% thereof on delivery of Employee's final cut of the Picture.

(iv)    Notwithstanding the foregoing, if principal photography of the Picture has not commenced within 8 weeks following the Start Date for any reason other than (1) death, disability or uncured material default of Employee, or (2) any event of force majeure, then the Director Fee will be payable pursuant to the payment schedule set forth in Paragraphs 2.(b)(i) through 2.(b)(iii) above commencing on the Start Date. Any payments made under this Paragraph 2.(b)(iv) in advance of the actual commencement of principal photography will not relieve Employer or Employee from their respective obligations hereunder to furnish and to render services in connection with the Picture, subject to Paragraph 3. below.

1771603v2

(17)

3.    **EXPIRATION OF THE HOLDING PERIOD.** In the event that as of the Start Date (1) pre-production of the Picture has not commenced, and/or (2) the completion bond for the Picture has not been fully executed, then the following will apply:

    (a)    Employer shall be paid (as set forth in Paragraph 2.(b)(iv) above) and retain the full Director Fee; and

    (b)    Employee shall be free to accept other engagements; provided, however, that the following will be applicable:

        (i)    Employee's Notice: For a period of 12 months following the expiration of the Holding Period, Employer shall keep Producer apprised, by written notice, of any bona fide third party offer for Employee's services which will or may require more than a 4 week time commitment by Employee and which Employer and/or Employee desires to accept (each, an **"Outside Offer"**). Such written notice will include the start and end dates, any "stop" dates, and will be provided to Producer by Employer on a timely basis prior to the scheduled date for the commencement of Employee's services in connection with the Outside Offer.

        (ii)    Producer's Right to Pre-empt: Producer shall have 5 business days from its receipt from Employer of notice of an Outside Offer within which to pre-empt the Outside Offer (or if Employee has no conflicting Outside Offer to engage Employee's directing services) by (1) setting a new unconditional start date for commencement of principal photography of the Picture so that such new start date would conflict with Employee's services in connection with the Outside Offer; and (2) confirming to Employee's satisfaction that Producer has secured the full financing for the Picture at the budget level approved by Employee and that the completion bond for the Picture has been fully executed.

        (iii)    Services for Outside Offer: If Producer does not pre-empt as provided in Paragraph 3.(b)(ii) above, Employer may accept the Outside Offer on behalf of Employee only on the terms and conditions of which Employer notified Producer. In such event Employer and Employee shall cooperate fully in advising Producer of the probable completion date of Employee's services on the Outside Offer and shall notify Producer of the actual completion date when Employee's services have been completed.

4.    **NO OBLIGATION TO PROCEED:** Notwithstanding any other provision of this Agreement, if at any time Producer elects not to require Employee's further services hereunder, Producer's obligations hereunder will be fully performed by payment of any unpaid portion of the Director Fee and any contingent compensation (as set forth in the "Long Form Agreement") which has vested pursuant to the terms of the "Long Form Agreement" (as defined below).

5.    **CONFIRMATION OF FINANCES:** On or before November 21, 2011 Producer shall provide Employer with verified documentation showing that a production account for the Picture has been established at UBS Bank, including a statement showing the amount of deposits in such account.

6.    **LEGAL ENFORCEMENT:** In the event that Producer fails to comply with any provision of this Deal Memo (including without limitation any failure by Producer to pay the Director Fee when and as due), Producer shall pay all costs and expenses of any legal actions taken by Employer and/or Employee to enforce the terms of this Deal Memo (including without limitation attorneys' fees and expenses).

7.    **FORMAL AGREEMENT:** Prior to the commencement of pre-production of the Picture, the parties will execute long form agreements containing the terms set forth in this Deal Memo as well as other terms consistent with agreements of this type (including, without limitation, directing credit, "Film By Credit," subsequent productions, contingent compensation, travel, perks, insurance, cuts and previews, approvals and consultations, previews and DVD copies), subject to good faith negotiations.

(signatures on next page)

This Deal Memo sets forth the entire understanding between Producer, on the one hand, and Employer and Employee, on the other hand, and cannot be modified except by a writing signed by all parties hereto, and will be construed in accordance with the laws of the State of California applicable to agreements entered into and to be performed in that state. The parties hereto hereby submit to the exclusive jurisdiction of the courts located in Los Angeles, California. This Deal Memo will be binding upon and inure to the benefit of each party's respective licensees, successors and assigns. In entering into this Agreement, the parties have not relied upon any representation or promise, written or oral, not contained herein.

The parties hereto have executed and delivered this Agreement as of the date first above written.

SKINNERVISION INCORPORATED ("Producer")

By:_____
Its:_____

COUNTERSIGNED:

_____
KEVIN SKINNER

OCEANS 11, INCORPORATED ("Employer")

By:_____
Its:_____

COUNTERSIGNED:

_____
MIKE GUNTHER ("Employee")



"ITALY BOYS"

### DIRECTOR DEAL MEMO

### OCEANS 11, INCORPORATED f/s/o MIKE GUNTHER

| | |
|---|---|
| DATE: | As of November 18, 2011 |
| PRODUCER: | SKINNERVISION, INCORPORATED<br>Attention: Kevin Skinner |
| EMPLOYER: | OCEANS 11, INCORPORATED<br>FED ID #: 88-0501514<br>c/o Weissmann Wolff Bergman<br>Coleman Grodin & Evall, LLP<br>9665 Wilshire Blvd., Suite 900<br>Beverly Hills, CA 90212<br>Attn: Matthew N. Sugarman, Esq. |
| EMPLOYEE: | MIKE GUNTHER<br>Citizen of: United States<br>Principal Residence: Los Angeles, CA<br>Capacity: DIRECTOR |

**PICTURE:** A feature-length theatrical motion picture project tentatively titled "Italy Boys."

1.      **HOLDING PERIOD.** In consideration of Producer engaging Employer on an unconditional "pay or play" basis to furnish Employee's production services in connection with the Picture, Employer agrees to cause Employee not to accept any other engagements during the "Initial Holding Period" which may conflict with Employee rendering directing services in connection with the Picture, with pre-production services of the Picture commencing on December 5, 2011. The "Initial Holding Period" will mean the period commencing on the date hereof and continuing until midnight (PST) on December 5, 2011. The Initial Holding Period and any further extensions thereof will be collectively referred to as the "Holding Period."

2.      **COMPENSATION.**

         (a)      Fixed Director Compensation. A guaranteed "Director Fee" equal to $900,000.

         (b)      Fixed Fee Payment Schedule. The Director Fee will be payable to Employer as follows ("Payment Schedule"):

                  (i)      50% thereof on commencement of pre-production of the Picture, but in any event no later than midnight (PST) December 5, 2011 (the "Start Date").

                  (ii)     25% thereof on the completion of principal photography.

                  (iii)    25% thereof on delivery of Employee's final cut of the Picture.

                  (iv)     Notwithstanding the foregoing, if principal photography of the Picture has not commenced within 8 weeks following the Start Date for any reason other than (1) death, disability or uncured material default of Employee, or (2) any event of force majeure, then the Director Fee will be payable pursuant to the payment schedule set forth in Paragraphs 2.(b)(i) through 2.(b)(iii) above commencing on the Start Date. Any payments made under this Paragraph 2.(b)(iv) in advance of the actual commencement of principal photography will not relieve Employer or Employee from their respective obligations hereunder to furnish and to render services in connection with the Picture, subject to Paragraph 3. below.

3.      **EXPIRATION OF THE HOLDING PERIOD.** In the event that as of the Start Date (1) pre-production of the Picture has not commenced, and/or (2) the completion bond for the Picture has not been fully executed, then the following will apply:

1771603v2

(a) Employer shall be paid (as set forth in Paragraph 2.(b)(iv) above) and retain the full Director Fee; and

(b) Employee shall be free to accept other engagements; provided, however, that the following will be applicable:

(i) Employee's Notice: For a period of 12 months following the expiration of the Holding Period, Employer shall keep Producer apprised, by written notice, of any bona fide third party offer for Employee's services which will or may require more than a 4 week time commitment by Employee and which Employer and/or Employee desires to accept (each, an "Outside Offer"). Such written notice will include the start and end dates, any "stop" dates, and will be provided to Producer by Employer on a timely basis prior to the scheduled date for the commencement of Employee's services in connection with the Outside Offer.

(ii) Producer's Right to Pre-empt: Producer shall have 5 business days from its receipt from Employer of notice of an Outside Offer within which to pre-empt the Outside Offer (or if Employee has no conflicting Outside Offer to engage Employee's directing services) by (1) setting a new unconditional start date for commencement of principal photography of the Picture so that such new start date would conflict with Employee's services in connection with the Outside Offer; and (2) confirming to Employee's satisfaction that Producer has secured the full financing for the Picture at the budget level approved by Employee and that the completion bond for the Picture has been fully executed.

(iii) Services for Outside Offer: If Producer does not pre-empt as provided in Paragraph 3.(b)(ii) above, Employer may accept the Outside Offer on behalf of Employee only on the terms and conditions of which Employer notified Producer. In such event Employer and Employee shall cooperate fully in advising Producer of the probable completion date of Employee's services on the Outside Offer and shall notify Producer of the actual completion date when Employee's services have been completed.

4. **NO OBLIGATION TO PROCEED:** Notwithstanding any other provision of this Agreement, if at any time Producer elects not to require Employee's further services hereunder, Producer's obligations hereunder will be fully performed by payment of any unpaid portion of the Director Fee and any contingent compensation (as set forth in the "Long Form Agreement") which has vested pursuant to the terms of the "Long Form Agreement" (as defined below).

5. **CONFIRMATION OF FINANCES:** On or before November 21, 2011 Producer shall provide Employer with verified documentation showing that a production account for the Picture has been established at UBS Bank, including a statement showing the amount of deposits in such account.

6. **LEGAL ENFORCEMENT:** In the event that Producer fails to comply with any provision of this Deal Memo (including without limitation any failure by Producer to pay the Director Fee when and as due), Producer shall pay all costs and expenses of any legal actions taken by Employer and/or Employee to enforce the terms of this Deal Memo (including without limitation attorneys' fees and expenses).

7. **FORMAL AGREEMENT:** Prior to the commencement of pre-production of the Picture, the parties will execute long form agreements containing the terms set forth in this Deal Memo as well as other terms consistent with agreements of this type (including, without limitation, directing credit, "Film By Credit," subsequent productions, contingent compensation, travel, perks, insurance, cuts and previews, approvals and consultations, previews and DVD copies), subject to good faith negotiations.

(signatures on next page)

This Deal Memo sets forth the entire understanding between Producer, on the one hand, and Employer and Employee, on the other hand, and cannot be modified except by a writing signed by all parties hereto, and will be construed in accordance with the laws of the State of California applicable to agreements entered into and to be performed in that state. The parties hereto hereby submit to the exclusive jurisdiction of the courts located in Los

Angeles, California. This Deal Memo will be binding upon and inure to the benefit of each party's respective licensees, successors and assigns. In entering into this Agreement, the parties have not relied upon any representation or promise, written or oral, not contained herein.

The parties hereto have executed and delivered this Agreement as of the date first above written.

SKINNERVISION INCORPORATED ("Producer")

By:_____
Its:_____

COUNTERSIGNED:

_____
KEVIN SKINNER

OCEANS 11, INCORPORATED ("Employer")

By:_____
Its:_____

COUNTERSIGNED:

_____
MIKE GUNTHER ("Employee")

1771603v2

5/7/2012

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV12- 6867 CAS (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

OCEANS II, INC., a California Corporation; SONNY
MICHEL ("MIKE") GUNTHER, an individual; and
DEBRA KENNARD, an individual,

*Plaintiff(s)*

v.

SKINNERVISION INC., a Florida Corporation; KEVIN
SKINNER, an individual; and DOES 1 through 10,
inclusive,

*Defendant(s)*

Civil Action No.
**CV12·6867** CAS (Ez)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Anthony R. Strauss, Esq.,
STRAUSS LAW GROUP
121 N. Fir St., Suite F
Ventura, CA 93001

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:   AUG – 9 2012

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
OCEANS II, INC., a California Corporation;
SONNY MICHEL ("MIKE") GUNTHER, an individual; and
DEBRA KENNARD, an individual,

**DEFENDANTS**
SKINNERVISION INC., a Florida Corporation;
KEVIN SKINNER, an individual; and
DOES 1 through 10, inclusive,

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Anthony R. Strauss – SBN 72842  (805) 641.9992
STRAUSS LAW GROUP, A Professional Corporation
121 N. Fir St., Suite F, Ventura, CA 93001

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country ☐ 3 | | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ MONEY DEMANDED IN COMPLAINT: $ $1,017,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1332 Diversity for State Causes of Action; Contract; Fraud; Negligent Misrepresentation and Labor Code Violations; 29 USC 216(b) Fair Labor Standards Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:  Case Number: **CV12-6867**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| OCEANS II, INC., a California Corporation - Los Angeles<br>SONNY MICHEL ("MIKE") GUNTHER, an individual - Los Angeles<br>DEBRA KENNARD, an individual - Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | All Defendants - Florida |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All Claims - Los Angeles, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____      Date August 8, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |